Thank you. Please call the next case. This case is 412-069-11C, Catur Overhead Door, Pelham v. Workers' Compensation Comm'n, General Weaver, Appellee. Mr. Elwood, you may proceed. Good afternoon. I'm here for the Catur Overhead Door. We're asking this Court to reverse the Circuit Court's rulings on two occasions and to reinstate the original 2010 Commission decision which unanimously denied Commissioner Weaver's request for permanent total disability benefits. Because of the posture of this case, the first thing that we need to do is take a look at the original Commission decision from 2010 and ask ourselves, is that ruling by the Commission against a manifest way of the evidence? And just to recall, in that case, the original Commission looked at the facts and it concluded 3-0 that the petitioner had failed to establish a claim for permanent total disability. Now, there was a dissenting opinion by Commissioner Mason, but her dissent was limited to the extent of the permanent partial disability. In other words, it was 50%. Maybe she thought it should have been 60% or 70% or something along those lines. When we took this case to the Circuit Court originally, the Circuit Court's proper role should have been to say, here are the findings of the Commission. Is there evidence to support what the Commission has done? But it didn't do that. Had it done that, what it would have found is that the original Commission decision found first that Mr. Weaver was not credible. It said, Weaver had presented no convincing evidence that he is disabled to the extent he claims. Clearly, they did not believe him. They say this as they start their analysis, and then as they walk through their decision, as they're talking about Dr. Rademacher's records, they point out the points where the petitioner claimed he couldn't travel out of state, which he did on three occasions. They point out Dr. Mike Meyer found secondary financial gain motivation, something that was agreed to by Dr. Fletcher, who found symptom magnification. They also pointed out that Dr. Fanter had offered a spinal cord stimulator, and in response to that, the Commission said, if the petitioner has a degree of pain described in his testimony, it seems inconsistent. He would not agree to a trial of a spinal cord stimulator. But they didn't stop there. They meticulously went through all the medical opinions in this case, going back to 1999 after the first hearings in this case. And they went through and they dissected those opinions and said, we don't believe what this doctor is saying. We don't find that to be persuasive. Specifically, the two doctors in this case, the petitioner relies on Dr. Rademacher and Dr. Menard, their opinions were reviewed, they were considered, and they were rejected. And they were rejected for articulated reasons. So you would like us to reverse the circuit court and affirm the Commission? Absolutely. The original Commission decision. It needs to be reinstated. There was ample evidence for what the Commission did on the original case. But not only did it go through the medical, and it found Dr. Fletcher's opinions to be the most credible, but then it went on and it did the same analysis with respect to the vocational opinions. And again, it went through, it rejected Gustafson's opinions, it relied on Hammond's, and it relied on Liptick's. And in particular, it pointed out that Liptick had found a job opportunity, an interview for a petitioner with this company called Expeditor, which was painted up as a telemarketing company by counsel. But she was specifically asked in her phone deck, is this telemarketing? She said, no, it's not. It's a different type of, sometimes it can be a business-to-business type of operation, where the individual can work for the business and make phone calls on behalf of a business. So clearly it was a job opportunity for him to pursue. And if you look at the last two paragraphs of the Commission's original decision, it clearly placed a lot of emphasis on that job opportunity and the fact that there were numerous attempts by Liptick to get them to pay attention to this, to follow up and go through the interviews, but those were rejected over and over and over again. So after we presented our arguments to the Circuit Court on the first occasion, what we get is an opinion reversing and doing all the things that your decisions say that a court review is not supposed to do. Interjecting the court's own opinions, reassessing the witness's credibility, going back to the medical and say, I don't really believe that doctor. I think this doctor's more credible. That doctor's a traitor. He's more familiar with the background of this individual. This doctor might be biased because he's an IME. I don't believe this, as he uses his quotes, job offer, and he does that throughout his description. Clearly, what the Circuit Court did in the first instance is to completely interject his own opinions into this case, sent the case back. Now, the thing I thought was really interesting is when Mr. Danza and I show up to argue this case at the commission, but the second time we walk up to the commission and Commissioner Mason looks at us and she goes, what are we supposed to do? We're boxed in here. And so that argument took place while you saw the result of that in the second decision. Like we need to do something here? Well, they wanted to do something else. They wanted to reinstate the original decision, and I think that's borne out by the second decision where they point out specifically, we want to make a note that we painstakingly reviewed this record and we reached the same conclusion. And I think that's extremely important. This is a case where all the evidence on both sides has holes. I don't think that we can deny that. I don't think that Mr. Danza can deny that. Somebody has to sift through that evidence and say, yeah, I understand there's a hole here, but I'm going to rely on this part. I'm going to reject this part and rely on this part. And you reach a decision. And when that happens, we all know that that's a commission function. They did it here and they did it here twice. And the circuit court interjecting its own opinions in this case was simply wrong. And it's against all the cases that this court has put out and the understanding of what a responsibility of a reviewing court is. Did you consider filing a motion to reconsider in the trial court? No, absolutely not. No, I do not. I typically don't do that, no. All right. But, I mean, given what appears to be the circuit court assuming the hat of the trier of fact as opposed to judging it by the manifest way, it would seem that if you pointed that out, you know, I don't know. I don't know if it was misapprehension on the part of the circuit court. What's your thinking? I would say this. One, I considered that, and then I decided not to do that. Actually, I filed a 306 petition, but that was denied. And so we went back and we had a second hearing. But, ironically, on the second review to the circuit court, after an attempt to be before another court, we ended up in front of the same judge. And he actually read the same arguments that the court has seen today. You read the ruling into the record? Pardon me? It wasn't a written, random decision. You just read the findings into the record? On the review on the second time? He read the briefs and he reviewed the record. And he made oral findings? And then he issued a second opinion and essentially said that the commission had reached the right decision. And we pointed that out in the brief. We think this is a classic case of just interference, and the original decision should be reinstated. And thank you. Go on, never mind. Oh, okay. Go ahead. Thank you. Thank you, counsel. Mr. Danz, may I respond? Members of the court, counsel, my name is Warren Danz. My argument is totally contrary to his argument. It looks to me that when Judge Weber saw this, he saw the truth of the whole case, that we presented all the evidence of total permanent disability. And if you want to use number one issue, which is the manifest way, he reversed it back with some findings consistent with Commissioner Mason. And if you want to look at the facts, he said basically the facts that there is all the evidence here of total permanent disability. Let's take a look. Number one, Dr. Long did two surgeries and called her a failed surgery and said, I have nothing more for you. They sent the petitioner to three IMEs. All of you agreed that he's got a failed back syndrome, couldn't do no work, sent epidurals, injections. He went to all the epidurals. The epidurals didn't work. He went to Panada for them. Panada says you've got a significant injury, disability, arachnoiditis of the spine, and maybe a spinal stimulator will help. He went back to therapy. They said a spinal stimulator is not going to help. What they did then, the therapy people brought him back to Dr. Ronemaker and said here, you just take care of his medical management and he's been on narcotic medication ever since. Now they say there is inconsistency by Fletcher. Well, Fletcher basically found all the same findings as Dr. Nord. He said there's definitely positive findings. He's got an abnormal exam. It's the most significant disability that he may have seen in his course of treatments. Keep in mind that after three failed IMEs, they finally got Fletcher to say he could do a five pound. And Fletcher says, well, you can do burn CDs at home. That's his concept of employment. And they brought in their expert, Bob Hammond. By the way, talk about inconsistencies. Get this one. Bob Hammond in 1999 said this man's total permanent disability. Now he says, well, I think he could do some sedentary sit and stand after he sees Fletcher's exam. See the inconsistency with Bob Hammond. That will really shock you. Now, even the FCE of their own doctor that they sent him to before Fletcher, you read that in the report what he said. He said in the FCE that Mr. Weaver is unable and does not possess the abilities to allow him to be successful in gainful employment at this time. He should discuss permanent disability rates. That's their FCE from Dr. Shea. That was their third IME. Well, of course, they went and got Fletcher to say he could do five pounds, he could burn CDs. And then they went and got this Corrine Lipzig out of New Jersey who doesn't even have an office address to say she was going to send something down to his house so he could do phone interviews. He doesn't even have a computer. He doesn't even have a room for her. She never spoke to him. The man said he could hardly read or write, has no computer skills, and that's why Judge Weber said, hey, this is inconsistent. There's no concrete evidence of any realistic employment. So they sent it back down to the commission, and the commission entered an award. And this is what's interesting. Here's maybe the thrust of my argument. This is not only a manifest with the evidence case. The commissioner said that in light of Judge Weber's findings of no concrete specific evidence of realistic alternative employment, we are compelled to find total permanent disability. And that was correct. That's correct with the law. Because once we present evidence that he is totally permanently disabled, the burden shifts to the employer to show realistic evidence that he can do a menial task. And this is my second part of my argument, that this is a legal issue here, and the commission, when they heard the evidence again and they re-decided it, they re-decided on the facts that there was no realistic offering by the employer, that he could even do a menial task, and that he had proven through the medical evidence that he's totally permanently disabled. And according to Dr. Norton, he couldn't even do sedentary work. Fletcher agreed with him. And so if the commission made that finding that he was totally permanently disabled because of no showing by the employer of any work that he could even do, then that's a legal finding, and that's my second issue in the case. And so we can consider this by the courts to show that Judge Weber was correct in reversing it based on manifestly the evidence, and we can show that the commission was correct because they re-decided the case. They re-decided the case on the basis that there was no showing by the employer, that the burden shifted to the employer, and the employer showed no meaningful employment. The only thing they showed was the burning of the CDs and his Corian lipstick. That's the only thing they showed. And I submit those are not realistic and that Judge Weber was 100% correct in his findings. In fact, I would ask that you look at the bottom of that decision. But in any event, I believe that the commission was correct on the second call round. And let's look at this. If the commission wasn't correct, why didn't they just increase it 10%? Why didn't they increase it 20%? They didn't do that. That's what counsel says. They didn't do that. They found total permit disability. And when Judge Weber remanded this back, he didn't say, hey, you've got to find total permit disability. He never said that. He said, I'm just merely remanding this back for you to consider the evidence of Commissioner Mason, consider the inconsistencies of the medical, and consider the fact that the job offering shown by the respondent was not a viable or concrete evidence of any realistic employment. And that's the legal issue of the case, that when you prove and you show the evidence that once the claimant presents medical evidence of his total disability, the burden shifts to the employer to present evidence that some kind of work is regularly and consistently available to the person. That's the O'Neill case. They did not do that, and that's why the commission said that they were compelled to find total permit disability, which, quite frankly, everyone, including Dr. Fletcher, said, this is probably the most significant disabled person they've ever seen. He has to stand up to go to the bathroom, this man. And Dr. Rademacher, if you read his testimony, it's extremely credible. He's known the man for 20 years. This petitioner worked for 20 years at this single job. He was 38 years old when he got hurt. And of all the cases I've ever seen, if this isn't a total permit, I don't know which one would be. So I submit that you look at those two issues carefully, please, because I don't want to just consider it as a manifest way to the evidence. I want to consider the fact that the commission re-decided inconsistent with the law about the shifting of the burden and did not show any realistic employment. Thank you. Thank you, Mr. Danz. Mr. Elwood, you may reply. Since Commissioner Mason's opinions are so important in the remand, I think if we look at what she says, she starts out her dissent in the original 2010 decision, and she says, while I agree that the petitioner failed to prove permanent total disability. It can't be any clearer. When we look at what the commission said the second time, they said, they're saying I feel boxed in by the remand language. It's absolutely, utterly clear. There's no argument. And while Warren's arguments have some compelling points, they're great before the commission as the finder of fact, and he made these arguments to the finder of fact. He says that doctor's not credible. My doctor is. He says this about these CDs. This is a joke of a job offer. All that stuff was made, and it was rejected. If we'd have lost the case to the commission the first time, I'd be having the same hard time that he should be having right now, trying to convince the court that it should be reversed. And there's no legal question here. This is a case that's clearly doctor versus doctor, expert versus expert, vogue versus vogue. It's a question of commission as finder of fact. How do you see this job offer? Is it legitimate? The circuit court said it wasn't, but that's not the circuit court's job. Commission said it was. And I think that's what makes it clear. And again, when we look at the second language, I've never seen the commission say something like this before. But this reflects the frustration that I saw in the oral argument. All three members of the commission wished to clarify that they painstakingly reviewed the extensive record in this case and reached the same conclusion. They don't leave us hanging. They tell us what it is. That petitioner failed to establish he's permanently and totally disabled. I think that's the end of the story. Thank you. Would you be here if they adjusted the award to, say, 70%? I don't know. I'd have to talk to my client about that question. But I think it would be a different scenario for us to evaluate if all they would have done on remand. We invited them to do that on remand. When we were standing in front of the commission, they said, look, if that's what you think you need to do, look at it, evaluate it, raise it, and we'll consider what we want to do about it. But this is a permanent total case. And I think they understood that. Thank you. Thank you, counsel, both, for your arguments in this matter. This afternoon will be taken under advisement. A written disposition shall issue.